**Bennie Morgan FICKLIN,
Petitioner–Appellant,**

v.

**Sherman HATCHER; Frankie Sue Del Papa, Respondents–Appellees.**

No. 98–15025.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 10, 1999.

Filed May 25, 1999.

---

**3.** Having done so, we deny UPS's Motion to Strike Plaintiff–Appellant's Request for Judi- cial Notice as moot.

John C. Lambrose, Assistant Federal Public Defender, Las Vegas, Nevada, for. the petitioner-appellant.

Victor H. Schulze, II, Deputy Attorney General, Las Vegas, Nevada, for the respondents-appellees.

Before: SNEED, MICHEL [1] and THOMAS, Circuit Judges.

SNEED, Circuit Judge:

Petitioner Bennie Ficklin ("petitioner") appeals from the decision of the United States District Court for the District of Nevada, the Honorable Philip M. Pro, Presiding, which denied his petition for a writ of habeas corpus. Petitioner argues that his conviction for first degree murder following a trial in Nevada state court implicated the Double Jeopardy Clause of the United States Constitution. He contends that the instructions given at trial allowed the jury to premise its guilty verdict on a robbery for which he had already pleaded guilty, thereby putting him in jeopardy twice for that crime.

The district court disagreed and held that petitioner failed to establish that his first degree murder conviction was predicated on the robbery. The court found that there was "sufficient evidence" in the record to support the conclusion that the jury rested its verdict on a theory of premeditation and not on felony murder. The district court denied the petition and this appeal followed.

We have jurisdiction pursuant to 28 U.S.C. § 2253 and affirm the decision of the district court, albeit on different grounds.

## BACKGROUND

At the age of fifteen, petitioner was arrested for the robbery of a tavern in Las Vegas, Nevada, and the death of one of its patrons. Petitioner subsequently was charged with seven counts of robbery in juvenile court. In these juvenile proceedings, petitioner agreed to admit to one count of robbery in exchange for the State's agreement to dismiss all other robbery counts.

1. Honorable Paul R. Michel, United States Circuit Judge for the Federal Circuit, sitting by designation.

At the same time, the State pursued murder charges against petitioner in state trial court. At the conclusion of petitioner's trial, the trial court instructed the jury that a murder conviction could be supported by a finding of express or implied malice. The court further instructed the jury that if it concluded that petitioner committed the murder in perpetration of a robbery, it could imply that petitioner acted with the requisite malice. The court also instructed the jury that it could return a verdict of first degree murder *only* if it found that petitioner committed the murder willfully, deliberately and with premeditation.

There are several pertinent instructions in this case, specifically:

*INSTRUCTION NO. 4:*

Murder is the unlawful killing of a human being, with malice aforethought, either express or implied. The unlawful killing may be effected by any of the various means by which death may be occasioned.

In order to prove the commission of the crime of Murder, each of the following elements must be proved.

1. That a human being was killed,

2. That the killing was unlawful, and

3. That the killing was done with malice aforethought.

*Malice aforethought is implied when a Murder is committed in the perpetration of or in an attempt to perpetrate a Robbery.*

*INSTRUCTION NO. 5:*

Any kind of wilful, deliberate and premeditated killing is *Murder in the 1st Degree.*

*INSTRUCTION NO. 8:*

*Express malice is that deliberate intention unlawfully to take away the life of a fellow creature, which is manifested*

*by external circumstances capable of proof.*

Malice shall be implied when no considerable provocation appears, or when all the circumstances of the killing show an abandoned and malignant heart.

*INSTRUCTION NO. 9:*

All Murder which is not Murder of the First Degree is Murder of the Second Degree.

Murder of the Second Degree is the unlawful killing of a human being with malice aforethought, but *without the . . . deliberation and premeditation.*

The jury subsequently convicted petitioner of *first degree* murder. Petitioner appealed to the Nevada Supreme Court, arguing, *inter alia,* that his conviction violated the Double Jeopardy Clause of the United States Constitution. Petitioner argued that because he had already pleaded guilty to robbery in juvenile proceedings, the jury instruction that allowed the jury to imply malice if it found that petitioner committed robbery (i.e., Instruction Number 4) caused the jury to return a verdict that punished him a second time for that robbery. The Nevada Supreme Court rejected petitioner's argument and affirmed his conviction and sentence. Petitioner filed a petition for a writ of habeas corpus, again arguing that the conviction violated Double Jeopardy. The district court rejected petitioner's argument and he timely appealed that decision.

*ANALYSIS*

■ We must decide whether the jury in this case relied or could have relied on an instruction that placed petitioner in double jeopardy for a robbery to which he had already pleaded guilty in juvenile court. We conclude that it was error for the trial court to instruct the jury that it could imply malice if it concluded that petitioner committed robbery.[2] We hold,

**2.** It is clear under federal and Nevada law that a prior juvenile adjudication for robbery and the subsequent prosecution for murder, where the jury relies on that same robbery to convict a defendant of murder, constitute multiple trials for the same offense.

First, under Nevada law, a "juvenile proceeding[ ] based upon the offense alleged in

however, that any instructional error was harmless because we can conclude with certainty from the record that the jury did not and could not have relied on the faulty instruction to convict petitioner of first degree murder.

A. *Harmless error analysis:* Zant v. Stephens.

■ The Supreme Court's decision in *Zant v. Stephens*, 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983), requires us to examine the record as a whole to determine whether the jury rested its guilty verdict on the implied malice theory. In *Zant*, the Supreme Court affirmed the death sentence of a defendant where the jury returned a verdict of death based on three aggravating circumstances, one of which subsequently was held unconstitutional by a state appellate court. *Id.* at 879, 103 S.Ct. at 2744, 77 L.Ed.2d 235. The *Zant* jury indicated on its verdict sheet that the defendant had committed the three aggravating circumstances, but did not indicate which combination of the three led it to sentence the defendant to death. *Id.* The Supreme Court held that because any of the three aggravating circumstances were statutorily sufficient to impose a sentence of death on the defen-

dant, it did not matter that one subsequently was held unconstitutional. *See id.* at 881, 103 S.Ct. at 2745, 77 L.Ed.2d 235. In other words, it was not necessary to vacate the death sentence because it was clear from the verdict that the sentence of death was appropriate notwithstanding the jury's reliance on an unconstitutional aggravating circumstance.

The *Zant* Court, in a passage important to this case, held that:

[A] general verdict must be set aside if the jury was instructed that it could rely on any of two or more independent grounds, and one of those grounds is insufficient, because the verdict may have rested exclusively on the insufficient ground. The cases in which this rule has been applied all involved general verdicts *based on a record that left the reviewing court uncertain as to the actual ground on which the jury's decision rested.*

*Id.* (citing *Williams v. North Carolina*, 317 U.S. 287, 292, 63 S.Ct. 207, 210, 87 L.Ed. 279 (1942) ("To say that a general verdict of guilty should be upheld though we cannot know that it did not rest on the invalid constitutional ground on which the case was submitted to the jury, would be to

the petition alleging delinquency or an offense based upon the same conduct are barred if the court has begun taking evidence or has accepted a child's admission of the facts alleged in the petition. No child may be prosecuted first as a juvenile and later as an adult, or in two juvenile court hearings for the same offense." Nev.Rev.Stat. § 62.195(2) (1997); *see also Breed v. Jones*, 421 U.S. 519, 95 S.Ct. 1779, 44 L.Ed.2d 346 (1975) (adjudication in juvenile proceedings sufficient for jeopardy to attach). Petitioner accepted responsibility for the robbery charge in juvenile court before the state finished prosecuting his "adult" trial for murder. If the offenses of robbery and felony murder are the same for Double Jeopardy purposes, Double Jeopardy bars the second prosecution for felony murder.

Second, the Supreme Court has held, in *Harris v. Oklahoma*, 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977) (per curiam), that the offenses of robbery and felony murder predicated on that same robbery are the same offenses for purposes of Double Jeopar-

dy and a defendant cannot be tried for one offense subsequent to a trial or plea on the other. The rationale of *Harris*, and for that matter, double jeopardy itself, is that the Constitution prohibits the states from having two opportunities to convict a defendant on the same charge. For example, if the state proceeded against petitioner for robbery and he was acquitted, the Constitution prohibits the states from attempting to obtain a second conviction for that robbery, whether as an independent charge, or as part of a murder charge.

Therefore, because jeopardy has already attached for petitioner's robbery, it was error for the trial court to instruct the jury that it could imply malice if it found that petitioner committed robbery. Respondent and the district court appear to concede that the instruction is erroneous, as it is raised in neither the briefs to this Court nor in the opinion below. The only issue in dispute, therefore, is whether the error is harmless.

countenance a procedure which would cause a serious impairment of constitutional rights."); *Cramer v. United States,* 325 U.S. 1, 36 n. 45, 65 S.Ct. 918, 935 n. 45, 89 L.Ed. 1441 (1945); *Terminiello v. Chicago,* 337 U.S. 1, 5–6, 69 S.Ct. 894, 896–97, 93 L.Ed. 1131 (1949); and *Yates v. United States,* 354 U.S. 298, 311–12, 77 S.Ct. 1064, 1072–73, 1 L.Ed.2d 1356 (1957)) (emphasis added).

B. *Application of* Zant *to petitioner's case.*

■ In this case, the judge instructed the jury that, in order to find petitioner guilty of first degree murder, it must have found that the murder was "wilful, deliberate and premeditated." The jury returned a verdict of first degree murder. Therefore, we know that the jury concluded that the murder was premeditated, notwithstanding the fact that the verdict was general and did not so specify.

The instructions in this case differ in one significant respect from general Nevada jury instructions and statutes on murder. Normally, under Nevada law, first degree murder includes felony murder, premeditated murder, and murder committed against a peace officer. *See* Nev. Rev.Stat. § 200.030 (1997). However, in this case, instruction number five, to repeat, defined murder in the first degree only as "willful, deliberate and premeditated Murder." Therefore, the trial court carefully avoided double jeopardy concerns in this case by instructing the jury that a first degree murder conviction only could be supported by a finding of premeditation. It did not instruct on the felony murder rule. Under instruction number nine, in fact, the trial court instructed the jury that all murder perpetrated without deliberation and premeditation, including felony murder, is second degree murder. And instruction number eight defines express malice as a "*deliberate* intention unlawfully to take away the life of a fellow creature." Because the jury returned a verdict of first degree murder, it necessarily determined that the murder was premeditated and deliberate murder, not felo-

ny murder predicated on implied malice. Consequently, it is clear that the jury did not rely on the implied malice instruction.

Thus, because the jury convicted petitioner of first degree murder, and the instructions defined first degree murder only as encompassing "wilful, deliberate and premeditated murder," the jury did not and could not have relied upon implied malice to convict petitioner. Therefore, the trial court's instruction that "[m]alice aforethought is implied when a Murder is committed in the perpetration of or in an attempt to perpetrate a Robbery" could not have played a part in the jury's determination that the petitioner was guilty of first degree murder. We hold that any instructional error was harmless. *See* *Zant,* 462 U.S. at 879, 103 S.Ct. at 2744, 77 L.Ed.2d 235.

C. *The parties' arguments.*

Petitioner nonetheless argues that a harmless error analysis is inappropriate in this case. In support of that position he relies on our decision in *Suniga v. Bunnell,* 998 F.2d 664 (9th Cir.1993). Petitioner is incorrect. In *Suniga,* we concluded that in circumstances where it was not possible to determine *with certainty* whether the jury relied on an unconstitutional theory to reach its guilty verdict, reversal was required without engaging in a harmless error analysis. 998 F.2d at 668–69. *Suniga,* however, is inapplicable in this case. We can tell with certainty from the jury instructions that the jury rested its verdict on a ground that did not implicate petitioner's constitutional right. It explicitly found that petitioner committed first degree, premeditated murder. In other words, the jury *did not* rely on the implied malice instruction. Any instructional error was harmless. *See supra,* pp. 1150–51.

Respondent asserts that any error in this case is harmless because the Nevada Supreme Court reviewed the trial transcript and found "sufficient" evidence of premeditation. In its eyes it is of no con-

sequence that the trial court instructed the jury that it could imply malice if it found that petitioner engaged in a robbery. Respondent relies on the following passage from the decision of the Nevada Supreme Court:

> [T]here was *ample* evidence to establish that appellant had committed the murder in a deliberate and premeditated manner.... Specifically, we note that several witnesses at appellant's trial testified that appellant had killed the victim with his shotgun at pointblank range in a manner which appeared to be intentional. (Emphasis added).

The court also took note that the "prosecution relied *primarily* on the theory that appellant had intentionally killed the victim." (Emphasis added).

This argument misreads *Zant*. It does not suggest that a general verdict can be · sustained if there is "ample" evidence presented on a constitutional theory or if the prosecution "relied primarily" on a constitutional theory. Rather, under *Zant*, review must be limited to determining whether it is *absolutely certain* from the record that the jury did not rely on the unconstitutional grounds to convict the defendant. The Supreme Court emphasized in *Zant* that "[i]f, under the instructions to the jury, one way of committing the offense charged is" not legally proper "the rule of these cases requires that a general verdict of guilt be set aside *even if the defendant's unprotected conduct, considered separately, would support the verdict.*" 462 U.S. at 883, 103 S.Ct. at 2746, 77 L.Ed.2d 235 (emphasis added).

Thus, it was incorrect for the Nevada Supreme Court and the district court to rest their holdings on the fact that there is "sufficient" evidence in the record to support the conclusion that the jury convicted petitioner of premeditated murder. *Zant* limits the harmless error analysis to situations in which this Court determines that it was *impossible* for the jury to have relied on the infirm instruction.

In this case that test was met. It was impossible under Nevada law-as defined in

these instructions-for the jury's decision to have rested on a theory of implied malice. Petitioner's conviction therefore withstands constitutional scrutiny.

For the reasons discussed, the decision of the district court is

**AFFIRMED.**