**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ANASTACIO LARA,
　　　　　　*Petitioner-Appellant,*

　　　　v.

S. RYAN, Warden,
　　　　　　*Respondent-Appellee.*

No. 05-16055

D.C. No.
CV-04-01957-CRB

OPINION

Appeal from the United States District Court
for the Northern District of California
Charles R. Breyer, District Judge, Presiding

Argued and Submitted
May 19, 2006—San Francisco, California

Filed August 1, 2006

Before: Betty B. Fletcher, Alex Kozinski, and
Raymond C. Fisher, Circuit Judges.

Opinion by Judge B. Fletcher

## COUNSEL

Maitreya Badami, San Francisco, California, for the petitioner-appellant.

Bill Lockyer, Robert R. Anderson, Gerald A. Engler, Peggy S. Ruffra, and David M. Baskind (argued), San Francisco, California, for the respondent-appellee.

## OPINION

B. FLETCHER, Circuit Judge:

Appellant Anastacio Lara ("Lara") was convicted by a jury of two counts of attempted murder and two counts of non-aggravated mayhem. The jury was instructed that it could convict him of attempted murder under either a proper theory of express malice or an improper implied-malice theory. Lara brought a petition for habeas corpus under 28 U.S.C. § 2254, alleging that the flawed jury instruction made it impossible to determine whether he was convicted under the correct legal theory. The district court denied habeas relief, and we affirm.

## I

The California Court of Appeal determined, and Lara does not challenge, the following summary of the facts:

> [Lara], Evencio Varela, and Martin Ortiz were neighbors. One evening, [Lara] and several guests were socializing and drinking beer in [Lara's] front yard. Varela and Ortiz joined the group. At some point, [Lara] and Varela began arguing. [Lara] pushed Varela. Varela's wife interceded and pushed [Lara] away from Varela. [Lara] then announced that he was going inside to get his gun. Varela and Ortiz went across the street to their homes. But they eventually returned to [Lara's] yard and continued socializing. [Lara] appeared and approached Varela within two or three feet. Two of [Lara's] friends grabbed Varela, and [Lara] took out a gun. [Lara] aimed the gun at Varela's temple and shot Varela just as Varela was able to struggle and turn his head. The bullet broke Varela's cheekbone and destroyed Varela's right eye. Two people then grabbed Ortiz. [Lara] approached Ortiz and aimed the gun between Ortiz's eyes. He shot Ortiz twice just as Ortiz was able to

struggle and turn his head. The first bullet went into Ortiz's mouth and destroyed his left eye. The second bullet went through Ortiz's chest and out Ortiz's back.

[Lara] testified and offered a self-defense scenario. According to [Lara], (1) Varela was drunk, insulting, and belligerent, (2) Varela assaulted him and left to get a gun after challenging him to a gunfight, (3) Varela returned and appeared to draw a gun, and (4) he pulled out his own gun in fear of his life and shot Varela and Ortiz. When asked whether his position was that he shot in self-defense, [Lara] answered, "exactly." When asked whether he was trying to kill the two, [Lara] answered, "No, I was trying to defend myself. I just didn't want to be bothered any more." [Lara's counsel] argued to the jury: "This is not a case of attempted manslaughter. I am not here asking for an attempted manslaughter verdict. This is simply a case of self-defense. The number one issue is self-defense. The number two issue is, did [Lara], in fact, even have the intent to kill? [Lara] didn't even empty the gun, he just waited until both men started to hit the ground and then he ran. He could have easily fired the last shot if he really wanted to do them in, if he really wanted to kill them. He did not empty the gun. He simply stopped shooting after they fell to the ground."

The trial court instructed the jury as to attempted murder in accordance with California Jury Instructions — Criminal ("CALJIC") No. 8.66, as follows:

Murder is the unlawful killing of a human being with malice aforethought. In order to prove attempted murder, each of the following elements must be proved: One, a direct but ineffectual act was done by one person towards killing another human

being, and, two, the person committing the act harbored express malice aforethought, namely a specific intent to kill unlawfully another human being.

However, the trial court defined "malice aforethought" by instructing the jury under CALJIC No. 8.11, which includes both an express *and implied* theory. According to the trial court:

> "Malice" may be either expressed or implied. Malice is express when there is manifested an intention unlawfully to kill a human being.

> Malice is implied when one, the attempted killing resulted from an intentional act, two, the natural consequences of the act are dangerous to human life, and, three, the act was deliberately performed with knowledge of the danger to, and with conscious disregard for, human life.

> When it is shown that an attempted killing resulted from the intentional doing of an act with express or implied malice, no other mental state need be shown to establish the mental state of malice aforethought.

> The mental state constituting malice aforethought does not necessarily require any ill will or hatred of the person the accused attempted to kill.

> The word "aforethought" does not imply deliberation or the lapse of considerable time. It only means that the required mental state must precede rather than follow the act.

The prosecutor relied upon the implied-malice instruction as well during closing argument:

Now malice is defined in another instruction as either being expressed or implied . . . . Malice can be expressed by someone saying I intend to kill you or writing something down, but in this case we're going to have to imply the defendant's intent at the time he committed the act.

There are three things that have to be proven for you to believe the defendant intended on killing either [Valera] or [Ortiz]. One, that it was an intentional act . . . .

Second, that the natural consequences of that act are dangerous to life . . . .

Then third, that the act was done deliberately with knowledge of the danger to and with conscious disregard for life . . . .

That's all I have to prove, ladies and gentlemen, for you to believe that the defendant intended on killing. If you find those three elements are met, the defendant is guilty of attempted murder.

The jury convicted Lara of two counts of attempted murder and two counts of non-aggravated mayhem. It also made a separate factual finding that the attempted murders were willful, deliberate and premeditated and that Lara intentionally fired his gun. Lara received a sentence of 55 years to life.

Lara appealed his sentence to the California Court of Appeal, which affirmed the judgment. The State conceded, and the court agreed, that "the jury was given conflicting instructions on the mental state element of attempted murder." *People v. Lara*, No. H022525, 2002 WL 31667309, at *2 (Cal. Ct. App. Nov. 27, 2002). Nevertheless, the court upheld the conviction under the harmless-error standard set forth in

*Chapman v. California*, 386 U.S. 18 (1967). The California Supreme Court denied review.

## II

Lara filed a petition for writ of habeas corpus in federal district court.[1] The federal district court held that the *Chapman* harmless-error standard applied by the California Court of Appeal does not govern cases where "a jury delivers a general verdict that may rest on different theories, at least one of which is constitutionally invalid." In such cases, the district court held, the error is *structural*, and "reversal of the conviction is required unless the reviewing court can determine with 'absolute certainty' that the jury did not ground their findings on a legally erroneous theory." Although the federal district court disagreed with the California Court of Appeal as to the applicable standard, it concluded that Lara's conviction nevertheless was "incompatible with an implied malice theory." It denied the habeas petition, and Lara filed a timely notice of appeal.[2]

## III

This court exercises de novo review of a district court's order denying habeas relief. *Landrigan v. Schriro*, 441 F.3d 638, 642 (9th Cir. 2006) (en banc). Because Lara filed his petition after April 24, 1996, it is governed by the standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d)(1). Under AEDPA, Lara is entitled to a writ if the state court's denial of his claim "resulted in a decision that was contrary to, or

---

[1]The petition was lodged in the United States District Court for the Central District of California, but was transferred to the Northern District of California.

[2]Additional claims made in Lara's petition to the district court are not before us, as the district court granted Lara's motion for a certificate of appealability exclusively on the implied-malice instruction.

involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (2).[3] A federal court must presume the correctness of the state court's factual findings. 28 U.S.C. § 2254(e)(1).

A state-court decision is "contrary to" clearly established Supreme Court precedent if the decision "contradicts the governing law set forth in our cases." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state-court decision will constitute an "unreasonable application" of federal law "if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." *Id.* at 407. A federal habeas court may not issue the writ simply by concluding in its independent judgment that the state-court decision applied federal law incorrectly. *Id.* at 411. "An '*unreasonable* application of federal law is different from an *incorrect* application of federal law.' " *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (citing *Williams*, 529 U.S. at 410 (emphasis in original)).

## IV

It is not disputed that the trial court improperly instructed the jury on the attempted-murder counts. The California Supreme Court made clear in *People v. Lee*, 738 P.2d 752, 754 (Cal. 1987), that only a finding of express malice will support a jury verdict for attempted murder. We must decide whether, notwithstanding that error, the district court properly denied habeas relief in this case.

---

[3]State prisoners wishing to bring federal collateral challenges using habeas must first exhaust available state remedies. 28 U.S.C. §§ 2254(b), (c). Lara's petition for review, rejected by the California Supreme Court on February 11, 2003, satisfies the exhaustion requirement.

## A

**[1]** "[I]t has long been settled that when a case is submitted to the jury on alternative theories the unconstitutionality of any of the theories requires that the conviction be set aside." *Sandstrom v. Montana*, 442 U.S. 510, 526 (1979) (citation, alternation, and internal quotation marks omitted). *See also Zant v. Stephen*s, 462 U.S. 862, 881 (1983) ("[A] general verdict must be set aside if the jury was instructed that it could rely on any of two or more independent grounds, and one of those grounds is insufficient, because the verdict may have rested exclusively on the insufficient ground."); *Yates v. United States*, 354 U.S. 298, 312 (1957) ("[T]he proper rule to be applied is that which requires a verdict to be set aside in cases where the verdict is supportable on one ground, but not on another, and it is impossible to tell which ground the jury selected."), *overruled on other grounds*, *Burks v. United States*, 437 U.S. 1 (1978); *Stromberg v. California*, 283 U.S. 359, 368 (1931) ("[I]f any of the clauses [of the statute] in question is invalid under the Federal Constitution, the conviction cannot be upheld."). This line of cases, originating with *Stromberg*, makes clear that "when a jury delivers a general verdict that may rest either on a legally valid or legally invalid ground[,] . . . the verdict may not stand when there is no way to determine its basis." *Keating v. Hood*, 191 F.3d 1053, 1062 (9th Cir. 1999), *overruled on other grounds by Payton v. Woodford*, 346 F.3d 1204 (9th Cir. 2003) (en banc). *See also United States v. Fulbright*, 105 F.3d 443, 451 (9th Cir.), *cert. denied*, 520 U.S. 1236 (1997) ("Where a jury returns a general verdict that is potentially based on a theory that was *legally impermissible* or *unconstitutional*, the conviction cannot be sustained.") (emphasis in original).

**[2]** "There is a limited exception to the principle: reversal may not be required if 'it is *absolutely certain*' that the jury relied upon the legally correct theory to convict the defendant." *Keating*, 191 F.3d at 1063 (citing *Ficklin v. Hatcher*, 177 F.3d 1147, 1152 (9th Cir. 1999) (emphasis in original)).

*See Zant*, 462 U.S. at 881 ("The cases in which this rule has been applied all involved general verdicts based on a record that left the reviewing court *uncertain* as to the actual ground on which the jury's decision rested." (emphasis added)). We have applied this "absolute certainty" principle in several habeas cases. *Keating*, 191 F.3d at 1063 (reversing for lack of absolute certainty where the jury was instructed on an aiding and abetting theory and on a direct perpetrator theory, where the latter was constitutionally infirm and where it was impossible to determine which theory the jury relied on to convict the defendant); *Ficklin*, 177 F.3d at 1152 (applying "absolute certainty" test to affirm a conviction where the jury was instructed under a correct and incorrect theory, one of which placed the defendant in double jeopardy). *But cf. Ho v. Carey*, 332 F.3d 587, 592 (9th Cir. 2003) (applying harmless-error standard where jury in second-degree murder trial was correctly instructed on implied malice, but erroneously instructed on general intent).

**[3]** Applying *Chapman*, the California Court of Appeal considered whether it was beyond reasonable doubt that the trial court's implied malice instruction did not contribute to or affect the verdict. This would have been the correct question to ask had the trial court's instruction simply omitted or improperly described *an element* of the offense with which Lara was charged. Instructions containing omissions or incorrect descriptions of elements are considered trial errors, not structural errors. *See Neder v. United States*, 527 U.S. 1, 8-11 (1999) (jury instruction omitting materiality element of tax-fraud offense is constitutional error subject to harmless error analysis); *California v. Roy*, 519 U.S. 2, 5 (1996) (omission of intent element from aiding and abetting instruction subject to harmless error analysis where jury could have found intent on evidence it considered). Here, however, the trial court did not merely omit or misstate an element of the charged offense. Rather, its error was structural, because it enabled the jury to deliver a general verdict that potentially rested on different *theories of guilt*, at least one of which was constitution-

ally invalid. *See Sandstrom*, 442 U.S. at 526. As such, Lara's claim arises from the "very limited class of cases" in which a structural error has occurred. *Neder*, 527 U.S. at 8 (quoting *Johnson v. United States*, 520 U.S. 461, 468 (1997)).

**[4]** We therefore disagree with the State's argument that *Chapman*'s harmless-error standard governs this case. Supreme Court precedent, as well as our own case law, requires reversal where a reviewing court cannot determine with absolute certainty whether a defendant was convicted under an erroneous theory. *See LaJoie v. Thompson*, 217 F.3d 663, 669 n.6 (9th Cir. 2000) (decisions by this court may be relevant in determining the scope of "clearly established" Supreme Court jurisprudence in a given area).

**B**

The district court concluded that it was "absolutely certain" that petitioner's conviction did not rest on the constitutionally infirm theory premised on implied malice and, consequently, denied habeas relief on this issue. It agreed with much of the analysis adopted by the California Court of Appeal, in particular its reliance on the fact that the jury specifically found that petitioner's actions were committed willfully, deliberately, and with premeditation; that the jury was instructed several times that a conviction for attempted murder requires a finding of express malice; and that the jury's question whether a "specific intent to kill" necessitated a finding that Lara had a "specific intent to permanently disable" indicated that it would convict on an express-malice theory.

**[5]** There is no doubt that both the trial court and the prosecutor told the jury that it could base a conviction for attempted murder on express or implied malice, an instruction contrary to California law. *Lee*, 738 P.2d at 754. The problem was compounded by the prosecution's reliance on the implied malice instruction in its closing arguments to the jury. However, the trial court also instructed the jury numerous times on

the requirement of actual malice. Those instructions seem to have made a lasting impression on the jury, which, during deliberations, sent the court a note seeking "a clarification of legal terms used in the instructions: if a person has a 'specific intent to kill,' does that person have a 'specific intent permanently to disable'?"

[6] In addition, the jury made a specific finding that Lara attempted to murder willfully, deliberately, and with premeditation — all of which would suggest that the jury found express malice because the trial court had instructed the jury that, to find the allegations true, it would have to find that "the attempted murder was preceded and accompanied by a clear, deliberate intent to kill" and the would-be slayer "weigh[ed] and consider[ed] the question of killing" and "decide[d] to kill."

[7] Had the jury relied on an incorrect implied-malice theory, it would have had to find recklessness, i.e., it would have had to determine that the act was intentional, that the natural consequences of the act were dangerous to human life, and that the act was deliberately performed with knowledge of the danger to, and with conscious disregard for, human life. As described above, the jury's special findings necessitate the conclusion that it found Lara guilty of attempted murder with express malice. *Cf. People v. Gallagher*, 69 N.Y.2d 525, 529 (N.Y. 1987) ("One who acts intentionally in shooting a person . . . — that is, with the *conscious objective* of bringing about that result — cannot at the same time act recklessly — that is, with *conscious disregard* of a substantial and unjustifiable risk that such a result will occur. The act is either intended or not intended; it cannot simultaneously be both." (emphasis added) (internal citations omitted)). Thus, because the jury specifically found that Lara committed the murder attempts willfully, deliberately and with premeditation, it necessarily did not find that Lara committed the attempts recklessly, which is what "a conscious disregard for human life" entails.

This also makes it inconsequential that Lara's jury did not make its special findings until after it made its general finding of guilt for attempted murder; logically, the jury could not have found that Lara attempted murder willfully, deliberately and with premeditation *and* that he attempted murder with implied malice. The two are inconsistent.

**[8]** In light of these considerations, we are absolutely certain that the jury convicted Lara under an express-malice theory.

## V

Where it cannot be determined whether the jury convicted under a correct or erroneous legal theory, we must reverse unless we can determine with "absolute certainty" that the jury convicted under the proper theory. In this case, we are absolutely certain that the jury found express malice. We therefore affirm the district court's denial of the petition for habeas corpus.

**AFFIRMED.**