(Slip Opinion) Cite as: 555 U. S. \_\_\_\_ (2008) 1

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 07–544

## ANTHONY HEDGPETH, WARDEN, PETITIONER *v.* MICHAEL ROBERT PULIDO

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

[December 2, 2008]

PER CURIAM.

A conviction based on a general verdict is subject to challenge if the jury was instructed on alternative theories of guilt and may have relied on an invalid one. See *Stromberg* v. *California*, 283 U. S. 359 (1931); *Yates* v. *United States*, 354 U. S. 298 (1957). In this case the Court of Appeals for the Ninth Circuit held that such an error is "structural error," requiring that the conviction be set aside on collateral review without regard to whether the flaw in the instructions prejudiced the defendant. The parties now agree that the Court of Appeals was wrong to categorize this type of error as "structural." They further agree that a reviewing court finding such error should ask whether the flaw in the instructions "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht* v. *Abrahamson*, 507 U. S. 619, 623 (1993) (internal quotation marks omitted). We agree as well and so hold.

Respondent Michael Pulido was convicted by a California jury of felony murder. On direct appeal, Pulido sought to vacate his conviction on the ground that the jury in-

structions were erroneous: They permitted the jury to find him guilty of felony murder if he formed the intent to aid and abet the underlying felony before the murder, but they also permitted the jury to find him guilty if he formed that intent only after the murder. The California Supreme Court agreed with Pulido that the latter theory was invalid under California law, but upheld the conviction on the ground that Pulido was not prejudiced by the error. *People* v. *Pulido*, 15 Cal. 4th 713, 727, 936 P. 2d 1235, 1243–1244 (1997). Pulido sought federal habeas relief, which the District Court granted after concluding that instructing the jury on the invalid theory had a "'substantial and injurious effect or influence in determining the jury's verdict.'" *Pulido* v. *Lamarque*, No. C 99–4933 CW (RR) (ND Cal., Mar. 24, 2005), App. to Pet. for Cert. 65a– 66a (quoting *Brecht*, *supra*, at 637).

The State appealed and the Court of Appeals affirmed. *Pulido* v. *Chrones*, 487 F. 3d 669 (2007) *(per curiam)*. On appeal, Pulido argued the District Court's *Brecht* analysis was correct, but in the alternative sought to avoid the harmless-error inquiry altogether. In support of that alternative argument, he maintained that when a jury returns a general verdict after being instructed on both a valid and an invalid theory, the conviction must be automatically set aside, without asking whether the invalid instruction was harmless. The Court of Appeals recognized that the *Brecht* "substantial and injurious effect" standard governs harmless-error analysis on federal habeas, 487 F. 3d, at 673, n. 3 (internal quotation marks omitted), but agreed with Pulido that instructing a jury on multiple theories of guilt, one of which is legally improper, was "structural" error exempting the instructions as a whole from harmless-error review, *id.*, at 675–676. Such error instead required setting aside the conviction on habeas unless the reviewing court could determine with "absolute certainty" that the defendant was convicted

under a proper theory. *Id.*, at 676 (citing *Lara* v. *Ryan*, 455 F. 3d 1080, 1086 (CA9 2006)). Because the instructions "le[ft] open the possibility" that the jury convicted Pulido on the impermissible ground, the court concluded that the verdict must be reversed. 487 F. 3d, at 676. We granted certiorari. 552 U. S. \_\_\_ (2008).

The Ninth Circuit precedent on which the Court of Appeals relied, see *Lara* v. *Ryan*, *supra*, based its structural-error analysis upon a line of our cases beginning with *Stromberg*. *Stromberg* addressed the validity of a general verdict that rested on an instruction that the petitioner could be found guilty for displaying a red flag as "'a sign, symbol, or emblem of opposition to organized government, or [a]s an invitation or stimulus to anarchistic action, or [a]s [a]n aid to propaganda that is of a seditious character.'" 283 U. S., at 363. After holding that the first clause of the instruction proscribed constitutionally protected conduct, we concluded that the petitioner's conviction must be reversed because "it [wa]s impossible to say under which clause of the [instruction] the conviction was obtained." *Id.*, at 368. In *Yates* v. *United States*, *supra*, we extended this reasoning to a conviction resting on multiple theories of guilt when one of those theories is not unconstitutional, but is otherwise legally flawed.

Both *Stromberg* and *Yates* were decided before we concluded in *Chapman* v. *California*, 386 U. S. 18 (1967), that constitutional errors can be harmless. Accordingly, neither *Stromberg* nor *Yates* had reason to address whether the instructional errors they identified could be reviewed for harmlessness, or instead required automatic reversal. In a series of post-*Chapman* cases, however, we concluded that various forms of instructional error are not structural but instead trial errors subject to harmless-error review. See, *e.g.*, *Neder* v. *United States*, 527 U. S. 1 (1999) (omission of an element of an offense); *California* v. *Roy*, 519 U. S. 2 (1996) *(per curiam)* (erroneous aider and abettor

instruction); *Pope* v. *Illinois*, 481 U. S. 497 (1987) (misstatement of an element of an offense); *Rose* v. *Clark*, 478 U. S. 570 (1986) (erroneous burden-shifting as to an element of an offense).

Although these cases did not arise in the context of a jury instructed on multiple theories of guilt, one of which is improper, nothing in them suggests that a different harmless-error analysis should govern in that particular context. To the contrary, we emphasized in *Rose* that "while there are some errors to which [harmless-error analysis] does not apply, they are the exception and not the rule." *Id.*, at 578. And *Neder* makes clear that harmless-error analysis applies to instructional errors so long as the error at issue does not categorically "'vitiat[e] *all* the jury's findings.'" 527 U. S., at 11 (quoting *Sullivan* v. *Louisiana*, 508 U. S. 275, 281 (1993) (erroneous reasonable-doubt instructions constitute structural error)). An instructional error arising in the context of multiple theories of guilt no more vitiates *all* the jury's findings than does omission or misstatement of an element of the offense when only one theory is submitted.

In fact, drawing a distinction between alternative-theory error and the instructional errors in *Neder*, *Roy*, *Pope*, and *Rose* would be "patently illogical," given that such a distinction "'reduces to the strange claim that, because the jury . . . received both a "good" charge and a "bad" charge on the issue, the error was somehow more pernicious than . . . where the *only* charge on the critical issue was a mistaken one.'" 487 F. 3d, at 677–678 (O'Scannlain, J., concurring specially) (quoting *Quigley* v. *Vose*, 834 F. 2d 14, 16 (CA1 1987) *(per curiam)*); see also *Becht* v. *United States*, 403 F. 3d 541, 548 (CA8 2005) (same), cert. denied, 546 U. S. 1177 (2006).

Pulido now agrees with the State that the Court of Appeals erred by treating the instructional error in this case as structural, and that the required prejudice analy-

sis should be governed by *Brecht*'s "substantial and injurious effect" standard. See Brief for Respondent 17 ("[t]he Ninth Circuit was mistaken in its 'structural defect' nomenclature"); Tr. of Oral Arg. 27 ("We acknowledge that this is a trial error and is subject to the Brecht prejudice standard"). So do we.

Pulido nonetheless maintains we should affirm because the Court of Appeals effectively engaged in the *Brecht* analysis, despite its clear description of the error as "structural." But despite full briefing on the applicability of *Brecht*, the Court of Appeals mentioned *Brecht* only briefly in a footnote, see 487 F. 3d, at 673, n. 3, and then went on to agree with Pulido's alternative assertion that "the instructional error was structural and therefore not subject to harmless error review," *id.*, at 675–676. The court also stated that the conviction had to be overturned unless the court was "absolutely certain" that the jury relied on a valid ground. *Id.,* at 676. Such a determination would appear to be a finding that no violation had occurred at all, rather than that any error was harmless. In any event, an "absolute certainty" standard is plainly inconsistent with *Brecht*. Accordingly, we express no view on whether Pulido is entitled to habeas relief, but rather remand to the Court of Appeals for application of *Brecht* in the first instance.*

The judgment is vacated, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

—————

*The dissent maintains the Court of Appeals "undertook a searching review of the parties' evidence and the jury instructions to determine the error's effect on the jury." *Post*, at 6 (opinion of STEVENS, J.). But the Court of Appeals reached its conclusion based solely on the existence of a typographical error in the special circumstances instructions, without addressing any of the State's arguments that the typographical error was harmless in light of the record as a whole. There was no need for that court to address those arguments, of course, because of its mistaken conclusion that the instructional error was structural. Under such circumstances, remand is the appropriate course.

# SUPREME COURT OF THE UNITED STATES

No. 07–544

ANTHONY HEDGPETH, WARDEN, PETITIONER *v.*
MICHAEL ROBERT PULIDO

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF
APPEALS FOR THE NINTH CIRCUIT

[December 2, 2008]

JUSTICE STEVENS, with whom JUSTICE SOUTER and
JUSTICE GINSBURG join, dissenting.

The Court of Appeals misused the term "structural
error" in its opinion affirming the District Court's order
granting Pulido's application for a writ of habeas corpus.
But the court's misnomer was inconsequential because its
decision rested on substantially the same analysis as the
District Court's, which correctly applied the standards set
forth in *Kotteakos* v. *United States*, 328 U. S. 750 (1946),
*Brecht* v. *Abrahamson*, 507 U. S. 619 (1993), and *O'Neal* v.
*McAninch*, 513 U. S. 432 (1995). The Court of Appeals'
decision therefore did not warrant this Court's review and
does not now merit a remand to require that court to
repeat its analysis. In my opinion, the interest in expedit-
ing the conclusion of this protracted litigation outweighs
the interest in correcting a misnomer.

Respondent Michael Pulido was charged with felony
murder for robbing a gas station and killing the attendant.
At trial, the State argued that Pulido acted alone. Pulido
maintained that his uncle was the principal actor and that
he had no knowledge of his uncle's plan when the two
arrived at the gas station. While he was waiting in the
car, Pulido claimed, he heard a shot and ran into the store.
At that point, his uncle insisted that Pulido help him pry
open the stolen cash register and dispose of it, and Pulido

reluctantly complied. The jury convicted Pulido of felony murder, but it was unable to reach a verdict on the charges that Pulido personally used a firearm and intentionally inflicted great bodily harm.

As a matter of California law, felony-murder liability extends to all persons jointly engaged in the commission of a felony at the time of a killing when one of the joint actors kills in furtherance of the common design. *People* v. *Pulido,* 15 Cal. 4th 713, 716, 936 P. 2d 1235, 1236 (1997). But a person is not guilty of felony murder if he is only a "late-joining" aider and abettor—*i.e.*, if he did not himself commit the murder and his participation in the underlying felony did not begin until after the victim was killed. *Ibid.* In this case, the trial court's instructions erroneously permitted the jury to find Pulido guilty on such a theory, as they did not require the jury to find either that Pulido committed the murder or that he aided and abetted the underlying robbery before the murder was committed. Because the instructions allowed the jury to convict Pulido of felony murder for conduct that does not amount to that offense, their inclusion was constitutional error.

On direct appeal, the California Supreme Court agreed with Pulido that the late-joiner theory was an invalid theory of felony-murder liability. *Ibid.* It nevertheless held that any error in the trial court's instructions was harmless. According to the court, the jury found that Pulido had been engaged in the robbery at the time of the killing because the robbery-murder special-circumstance instruction stated that "the murder was committed *while the defendant was engaged"* in the "commission of or attempted commission of [a] robbery." *Id.*, at 727, 936 P. 2d, at 1243 (citing Cal. Penal Code Ann. §190.2(a)(17) (West 1992) (internal quotation marks omitted)). Based on that portion of the instruction, the court concluded that the special-circumstance verdict "demonstrates that the jury did not accept the theory that [Pulido] joined the robbery

only after [the victim] was killed," and it therefore held that Pulido was not prejudiced by the error. 15 Cal. 4th, at 727, 936 P. 2d, at 1244.

In reaching that conclusion, however, the California Supreme Court failed to take into account the entire special-circumstance instruction. A typographical error in that instruction in fact permitted the jury to find the special circumstance of robbery-murder true if it found *either* that the murder was committed while the defendant was engaged in the commission of a robbery *or* that it "was committed in order to carry out or advance the commission of the crime of robbery or to facilitate the escape therefrom or to avoid detection"—a finding entirely consistent with the late-joiner theory. App. 14. Thus, as the State concedes, the erroneous instructions made it "reasonably likely" that the jury convicted Pulido on the impermissible theory. Brief for Petitioner 18.

After exhausting his state postconviction remedies,[1] Pulido sought a writ of habeas corpus in Federal District Court. The District Court recognized the erroneous disjunctive in the special-circumstance instruction that the California Supreme Court had overlooked, and it held that the state court's conclusion that Pulido was not prejudiced by erroneous instructions was "an objectively unreasonable application of clearly established federal law." App. to Pet. for Cert. 64a.

The District Court then considered the effect of that error on the jury. Correctly relying on *Brecht*, the District Court began its analysis by noting that a federal habeas petitioner "is not entitled to habeas relief unless the State court's error resulted in actual prejudice, that is, the error had a 'substantial and injurious effect or influence in

---

[1] The California Supreme Court summarily denied Pulido's state petition for a writ of habeas corpus. See *Pulido* v. *Chrones,* 487 F. 3d 669, 672 (CA9 2007) (per curiam).

determining the jury's verdict.'" App. to Pet. for Cert. 65a (quoting *Brecht*, 507 U. S., at 637). If an error had a substantial influence, or if "the record is so evenly balanced that a conscientious judge is in 'grave doubt'" as to whether it had such an effect, the conviction must be reversed. App. to Pet. for Cert. 65a. (quoting *O'Neal*, 513 U. S., at 438).

To determine whether the error was harmless under this standard, the District Court scrutinized the record, including the arguments of both parties, the evidence supporting their respective theories of the case, the jury instructions, the jury's questions to the trial court, and the various parts of the jury's verdict. App. to Pet. for Cert. 65a–66a. Throughout this inquiry, the District Court properly avoided substituting its judgment for the jury's. As we cautioned in *Kotteakos*, in undertaking harmless-error analysis "it is not the [reviewing] court's function to determine guilt or innocence. Nor is it to speculate upon probable reconviction and decide according to how the speculation comes out." 328 U. S., at 763 (citations omitted). Thus, "[t]he inquiry cannot be merely whether there was enough to support the result" in the absence of the error. *Id.*, at 765. Rather, the proper question is "whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand." *Ibid.;* accord, *O'Neal*, 513 U. S., at 437.

That was precisely the question addressed by the District Court when it sought to ascertain what the jury actually found. The court concluded that, while it is "possible" that the jury found that Pulido aided and abetted the robbery before the victim was killed, the court had "no way of determining whether this was the case." App. to Pet. for Cert. 66a. Because that uncertainty left the court with "'grave doubt as to the likely effect of [the] error on the jury's verdict,'" it faithfully applied the standard mandated by *Kotteakos* and *O'Neal* and found that the

error was not harmless. App. to Pet. for Cert. 66a. (quoting *O'Neal*, 513 U. S., at 435).

On appeal, Pulido contended that the judgment of the District Court should be affirmed whether the instructional error was viewed as structural error or as trial error. Brief of Appellee and Cross-Appellant in Nos. 05–15916, 05–16308 (CA9), pp. 53–64 (hereinafter Appellee's Brief). He argued that the error was not harmless under *Brecht* and *O'Neal* because the substantial evidence that supported the invalid theory made it likely that the jury convicted him on that basis. Appellee's Brief 55–64. In particular, Pulido noted that the "injurious effect" of this type of error "is greatest when the instruction compromises the defense by appearing to extend liability even to the factual scenario suggested by the defense evidence," as was true in this case. *Id.*, at 57 (internal quotation marks omitted and emphasis deleted). At oral argument, the parties' contentions similarly focused on the *Brecht* standard and the result that harmless-error analysis required.

Less than two months after oral argument, and before the Court of Appeals issued its decision in this case, a different panel of the Ninth Circuit decided *Lara* v. *Ryan*, 455 F. 3d 1080 (2006). Lara was convicted of attempted murder by a jury that had been instructed that it could find him guilty under either an express malice theory or an implied malice theory, the second of which is legally invalid. *Id.*, at 1082. The Ninth Circuit described the erroneous instruction as a "structural error," but it held that such an error does not necessitate reversal when a reviewing court can "determine with absolute certainty" that the defendant was not convicted under the erroneous theory. *Id.*, at 1086. Because the jury "made a specific finding that Lara attempted to murder willfully, deliberately, and with premeditation," the court concluded that it necessarily relied on the valid instruction and that reversal was therefore not required. *Id.*, at 1086–1087.

In those limited instances in which this Court has found an error "structural," we have done so because the error defies analysis by harmless-error standards. See *Arizona* v. *Fulminante*, 499 U. S. 279, 309 (1991); see also *United States* v. *Gonzalez-Lopez*, 548 U. S. 140, 150 (2006) (quoting *Sullivan* v. *Louisiana*, 508 U. S. 275, 282 (1993); *United States* v. *Cronic*, 466 U. S. 648, 659, and n. 25 (1984)). Indeed, it is because the consequences "'are necessarily unquantifiable and indeterminate'" that automatic reversal is required when such errors occur. *Gonzalez-Lopez*, 548 U. S., at 150 (quoting *Sullivan*, 508 U. S., at 282). That the court in *Lara* could be "'absolutely certain' that the jury relied upon the legally correct theory," 455 F. 3d, at 1085, shows both that the error was susceptible of harmless-error analysis and that the court in fact found the error harmless despite repeatedly referring to it as "structural."

Citing *Lara*, the Court of Appeals' *per curiam* opinion labeled the erroneous instruction in this case a structural error.[2] As in *Lara*, the court then undertook a searching review of the parties' evidence and the jury instructions to determine the error's effect on the jury. Noting, among other things, that "[t]he typographical error in the contemporaneity instruction relied upon by the California Supreme Court introduces doubt into any inference to be drawn from the jury's finding as to the special circumstance," the court concluded that "the jury instructions leave open the possibility that the jury convicted Pulido on a legally impermissible theory." *Pulido* v. *Chrones,* 487

_____

[2] The Court of Appeals' opinion asserts that Pulido argued that the error was structural under *Lara* v. *Ryan*, 455 F. 3d 1080 (CA9 2006). But due to the timing of the *Lara* decision, the parties did not raise arguments relying on that precedent until their postargument supplemental briefing. As discussed above, the parties' arguments had initially focused on the proper application of *Brecht* v. *Abrahamson*, 507 U. S. 619 (1993).

F. 3d 669, 676 (CA9 2007). That possibility of reliance on the erroneous instruction is the "substantial and injurious effect" to which *Brecht* refers. Thus, although the Court of Appeals called the error in this case by the wrong name, it performed substantially the same analysis and reached the same conclusion as the District Court did when it applied the standard prescribed by *Brecht*.[3]

Judge Thomas concurred separately both to defend the *Lara* decision and to demonstrate that harmless-error analysis also supports the panel's result. 487 F. 3d, at 678–683. Unlike the District Court, Judge Thomas applied the harmless-error standard announced in *Chapman* v. *California*, 386 U. S. 18 (1967), instead of looking to *Brecht*. 487 F. 3d, at 678. But his analysis similarly establishes that at least some jurors very likely relied on the impermissible late-joiner theory. *Id.*, at 679–683.

The record before us clearly supports that conclusion. Indeed, even petitioner admits that the ambiguity in the robbery and murder instructions and the trial court's confusing answers to the jury's questions "combined to make it reasonably likely that the jury applied the instructions in an unconstitutional way." Brief for Petitioner 18. That reasonable likelihood is sufficient to support the conclusion that the error was not harmless under *Brecht*.

Because the District Court's analysis was correct and the Court of Appeals' result was substantially the same, I think this Court's decision to remand for the purpose of obtaining a third analysis of the harmless-error issue is a misuse of scarce judicial resources. I would therefore affirm the judgment of the Court of Appeals.

––––––––––

[3] The Court of Appeals in fact cited *Brecht* and recited the proper standard in a footnote before turning its attention to *Lara:* "If there is a constitutional error, we consider whether the error was harmless; that is, whether the error had a '"substantial and injurious effect or influence in determining the jury's verdict."'" 487 F. 3d, at 673, n. 3.